15-3819-cr
*United States v. Khalil*

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

August Term, 2016

Argued: April 20, 2017

Decided: May 16, 2017

Docket No. 15-3819-cr

---

UNITED STATES OF AMERICA,

*Appellee*,

– v. –

CHOUDRY MUHAMMAD KHALIL,

*Defendant-Appellant.*

---

Before: CALABRESI, WESLEY, and LOHIER, *Circuit Judges*.

---

FOR APPELLANT: ANDREW H. FREIFELD, Law Office of Andrew Freifeld, New York, NY.

FOR APPELLEE: MATTHEW J. JACOBS (Emily Berger, Alexander A. Solomon, *on the brief*), Assistant United States Attorneys, *for* Bridget M. Rohde, Acting United States Attorney for the Eastern District of New York, Brooklyn, NY.

---

GUIDO CALABRESI*, Circuit Judge*:

Defendant-Appellant Choudry Muhammad Khalil appeals from a judgment of the

United States District Court for the Eastern District of New York (Mauskopf, *J.*) following

his conviction for (1) smuggling, conspiring to smuggle, transporting, conspiring to transport, and harboring an alien in violation of 8 U.S.C. § 1324; (2) transferring and conspiring to transfer false identification documents in violation of 18 U.S.C. § 1028; and (3) making false statements to federal agents in violation of 18 U.S.C. § 1001. On appeal, Khalil argues that the district court erred in denying his motion for judgments of acquittal on several counts of his conviction, that the district court constructively amended the indictment, and that the district court misapplied the United States Sentencing Guidelines.

Most of Khalil's contentions are dealt with in a summary order filed simultaneously with this opinion. Here, we address only Khalil's argument that he should have been acquitted of transporting an alien within the United States for profit in violation of 8 U.S.C. § 1324(a)(1)(A)(ii) and § 1324(a)(1)(B)(i) (Count Four). Khalil asserts that the evidence presented by the Government was insufficient to prove that he transported an alien "in furtherance of" the alien's illegal stay in the United States, as required by 8 U.S.C. § 1324(a)(1)(A)(ii) and by the district court's jury instructions. We agree. We therefore reverse the judgment of conviction on Count Four and remand the case with instructions for the district court to dismiss that count and for *de novo* resentencing.

**I. BACKGROUND**

We recount the facts and procedural history of the case only as relevant to the alien transportation charges under Count Four. Because the jury found Khalil guilty on that Count, "we view the evidence in the light most favorable to the government." *United States v. Veliz*, 800 F.3d 63, 66 (2d Cir. 2015), *cert. denied*, 136 S. Ct. 522 (2015) (internal quotation marks omitted).

*A. The Enterprise*

Khalil and his younger brother Ahmed, both born in Pakistan, became United States citizens in 2001 and 2008, respectively. At least as early as 2002, the brothers were principals of an international passport fraud ring operating primarily in Pakistan, the United States, and the United Kingdom. The organization specialized in manufacturing high-quality identity documents, such as passports, driver's licenses, and work permits. It also facilitated the illegal entry of undocumented aliens into the United States and Canada, and sometimes helped them to find housing and jobs in these countries. The organization's clients paid substantial fees for these services, which the brothers began collecting once their clients were established and employed. The record shows that Ahmed worked from Pakistan, London, and New York, while Khalil worked from Queens, New York, where he was also employed as a taxi driver.

*B. Transportation of Rafique from Queens to Pennsylvania Station*

In 2002, Ahmed agreed to smuggle Muhammad Nasir Rafique, a Pakistani man, into the United States for $25,000. Ahmed provided Rafique with a false United Kingdom passport and arranged for his air travel using that passport from London to New York City. Upon Rafique's arrival in New York City, Ahmed and Khalil, using fraudulent licenses, helped Rafique secure employment as a taxi driver. At Ahmed's direction, Rafique began to repay his $25,000 debt in weekly installments.

In early 2010, Rafique told Khalil that he wanted a fake British passport. Rafique believed that a fake British passport would enable him to obtain legal status in the United States. After Rafique had made a $1,000 down payment on the passport, Khalil recommended that Rafique instead use the passport to travel to Canada, explaining that he and Ahmed had sent other individuals to Canada, where they had successfully obtained legal status. Rafique agreed to this plan.

In late 2010, Khalil informed Rafique that the passport was ready. In the early morning of December 10, 2010, Khalil drove his taxi to pick up Rafique in Queens. Khalil gave the fake passport to Rafique and then drove him to Pennsylvania Station in Manhattan, where Khalil parked the car and bought Rafique a train ticket to Montreal. Rafique boarded the Canada-bound train but was arrested by United States Customs and Border Protection officers just before reaching the border.

4

*C. Procedural History*

On April 9, 2015, a grand jury in the United States District Court for the Eastern District of New York returned a ten-count, third superseding indictment against Khalil.

A jury trial began in April 2015. Khalil moved for a judgment of acquittal on each count pursuant to Rule 29 of the Federal Rules of Criminal Procedure ("Rule 29"). After the close of the Government's and Khalil's cases, the district court denied the motion. The jury convicted Khalil on all ten counts.

On November 5, 2015, the district court imposed: (a) a 51-month sentence on each count to run concurrently, followed by 3 years of supervised release; (b) a judgment of forfeiture; and (c) a $1,000 special assessment. Khalil, who was released on bond at the commencement of the case, was remanded upon conviction, and has been imprisoned since.

**II. DISCUSSION**

*A. Standard of Review*

We review the denial of a Rule 29 motion arguing sufficiency of the evidence *de novo*. *United States v. Soler*, 759 F.3d 226, 229 (2d Cir. 2014). In doing so, we ask "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

*B. Sufficiency of the Evidence: Transportation of Rafique*

Khalil was convicted on Count Four of violating 8 U.S.C. § 1324(a)(1)(A)(ii), which provides that the offense of unlawfully transporting an alien within the United States is committed by any person who:

knowing or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law, transports, or moves or attempts to transport or move such alien within the United States by means of transportation or otherwise, *in furtherance of such violation of law*

8 U.S.C. § 1324(a)(1)(A)(ii) (emphasis added). With respect to the "in furtherance of" element of the crime, the district court charged the jury as follows:

[T]he government must prove beyond a reasonable doubt . . . that the defendant acted willfully in furtherance of the alien's violation of law. In order to establish this element, the government must prove that the defendant knowingly and intentionally transported the alien in furtherance of the alien's unlawful presence in the United States. In other words, the evidence must show *a direct and substantial relationship between the transportation and its furtherance of the alien's unlawful presence in the United States*. Transportation of an alien unlawfully within the country is not, by itself, a violation of the statute if it is merely incidental to the alien's presence in the United States, for the law proscribes such conduct only when it is in furtherance of the alien's unlawful presence.

App. at 1465-66 (emphasis added). Khalil did not object to these instructions before the district court and does not object to them on appeal. Accordingly, we express no views about their correctness. *Cf. United States v. Stonefish*, 402 F.3d 691, 695 (6th Cir. 2005) ("In order to find that a defendant has acted 'in furtherance of such violation of law,' a court must conclude that the specific intent of the person transporting the illegal aliens was 'to deliberately assist an alien in maintaining his or her illegal presence' in this country." (quoting *United States v. 1982 Ford Pick-Up*, 873 F.2d 947, 951 (6th Cir. 1989))); *United States v. Barajas-Chavez*, 162 F.3d 1285, 1288 (10th Cir. 1999) (en banc) ("[W]e conclude the 'in

7

furtherance of' language is unambiguous. The statute requires that a . . . defendant's transportation or movement of the alien will help, advance, or promote the alien's illegal entry or continued illegal presence in the United States.").

Khalil argues that the district court erred in denying his motion for acquittal of this charge because, in driving Rafique to Pennylvania Station, Khalil

> did not intend to "further" [Rafique's] illegal presence in the United States, nor did the government show any "direct and substantial relationship between the transportation and its furtherance of the alien's unlawful presence." To the contrary, the undisputed evidence shows that the purpose of the transportation was to terminate [Rafique's] illegal presence in the United States forthwith.

Def. Br. 38.

Khalil is correct. There was insufficient evidence to allow a rational trier of fact to find, beyond a reasonable doubt, that the Government had proven this element of the crime as it was explained in the district court's jury instructions. Although the Government did present evidence that Khalil drove Rafique to Pennsylvania Station in order to facilitate Rafique's entry into Canada using a fraudulent passport, such a showing alone cannot establish a direct and substantial relationship between the transportation and an act in furtherance of Rafique's unlawful presence *in the United States*. The Government, for example, does not allege—nor is there anything in the record to suggest—that Khalil

intended to help Rafique enter Canada in order for Rafique to somehow return to the United States illegally. We therefore reverse Khalil's conviction on Count Four.

"[W]hen a count of conviction is overturned due to a 'conviction error,' the proper remedy is *de novo* resentencing, except in circumstances not applicable here." *United States v. Natal*, 849 F.3d 530, 538 (2d Cir. 2017) (per curiam) (citing *United States v. Powers*, 842 F.3d 177, 179–81 (2d Cir. 2016) (per curiam)). Therefore, on remand, Khalil must be resentenced *de novo*.

**III. CONCLUSION**

For the reasons stated above, we REVERSE the judgment of conviction on Count Four, and REMAND the case with instructions for the district court to dismiss that count and for *de novo* resentencing. For the reasons stated in the accompanying summary order, we AFFIRM the district court's judgments of conviction on the remaining Counts.